KATE L. HOWARD, Respondent, v. CITY OF NEW MADRID, Appellant.

St. Louis Court of Appeals, April 19, 1910.

1. **MUNICIPAL CORPORATIONS: Negligence: Injury on Sidewalk: Assumption That City Had Done Duty.** A person using a city sidewalk cannot presume that the city has done its duty in keeping the sidewalk in repair, when she knows it is in bad condition.

2. ———: ———: ———: **Duty of City.** A city is not bound, at all hazards, to keep its sidewalks in safe condition for travel, but is only bound to use ordinary care to keep them in a reasonably safe condition for travel by day and night.

3. ———: ———: ———: ———: **Overstating Degree of Care: Instructions: Harmless Error.** In an action against a city for injuries received on a defective sidewalk, an instruction overstating the degree of care required of a city was harmless error, where it was conceded the sidewalk was out of repair and had been for months and that its condition was known to everybody.

4. ———: ———: ———: **Presuming City Had Done Duty: Instructions: Harmless Error.** In an action against a city for injury received on a defective sidewalk, an instruction that plaintiff might presume that the city's duty had been performed by it and that the sidewalk was in a safe condition for use, was not prejudicial error, where there was no evidence tending to show plaintiff's contributory negligence.

5. ———: ———: ———: ———: ———: **Prejudicial Error, When.** In stating plaintiff might presume defendant had performed its duty and that the sidewalk was in a safe condition for use, when she knew it was in bad condition; the court

would have committed prejudicial error on the issue of whether plaintiff used due care for her own safety, if there was any evidence tending to convict her of contributory negligence.

6. ———: ———: ———: Contributory Negligence. It is not negligence for a person to use a sidewalk which he knows to be in bad repair, unless it is so unsafe that no person of ordinary prudence would attempt to walk over it.

7. DAMAGES: Excessive Verdict. Plaintiff, a school teacher, sustained a contusion of the lower third of the tibia from a defective sidewalk, causing considerable pain and injuring the nerves. At the time of trial, nearly two years afterward, she was still suffering from the injury, and had been disabled from pursuing her vocation for nearly a year. *Held*, a recovery of $2000 was not excessive.

8. ———: Loss of Time: Evidence: Harmless Error. In an action for personal injuries where evidence concerning the salary paid to plaintiff was received, although the petition did not allege loss of time or earnings, such evidence, whether rightly admitted or not, will not work a reversal of the judgment, where the jury were not authorized in the instruction on the measure of damages to assess damages for loss of time or earnings.

Appeal from Ste. Genevieve Circuit Court.—*Hon. Chas. A. Killian,* Judge.

AFFIRMED.

*W. H. & J. G. Miller* for appellant.

*J. V. Conran* for respondent.

GOODE, J.—Action by plaintiff, respondent here, against the city of New Madrid, a city of the fourth class, for damages for injuries alleged to have been received by her in passing over a defective sidewalk in that city. The amended petition upon which the case was tried, after setting out the incorporation of the city of New Madrid as a city of the fourth class, and the location of the street on which the injury is alleged to have occurred, and that the sidewalk along the street was maintained and permitted by the defendant for the

general public, and that defendant was fully aware of all the facts and statements in the petition set out, and that it was the duty of the defendant "to keep said walk in reasonably safe condition for the public and persons passing over the same," charges that the boards on which the top planks had been nailed had rotted; that the nails had come out of the planks and the walk was in such a condition that the defendant by failure to reconstruct, repair or remove, was grossly negligent or careless of the safety and welfare of the persons passing over the same and was aware of the condition of the walk and knew that the stringers or under pieces had so rotted; that the nails had come out; that the top planks were loose; or by the exercise of care and observation could have known these facts and that the plaintiff, "in orderly, carefully and properly passing over said walk," was struck by a loose board in the walk flying up and striking her upon the lower part of her leg, "causing her an injury which did cause her great pain, expense and loss of time, pain of body and anguish of mind; . . . that the defendant had not in any way, after timely notice and knowledge, taken any steps to warn the public of the condition of the said walk, that plaintiff did not know of the condition of the walk at the point where she was injured and damaged in the sum of $20,000; that the accident was occasioned by no fault of hers; wherefore plaintiff prays judgment for $10,000 actual and for $10,000 exemplary damages."

The answer alleges that whatever defects there were in the sidewalk were apparent to any one passing over it and using it and that if there were any defects, plaintiff assumed all the risks incident to such use; that whatever defects existed in the sidewalk were well known to plaintiff before she passed over it on the day on which she alleges she received the injuries complained of and had assumed all risks incident to such use, and whatever injuries she received were the direct result of

her own negligence and carelessness contributing direct-ly thereto, in this, that after receiving warning of the dangerous and unsafe condition of the sidewalk she voluntarily undertook to pass over it.

On trial before a court and jury, plaintiff intro-duced evidence tending to show that the condition of the sidewalk where the accident occurred was bad; that the condition was apparent to anybody, some planks were loose and some nailed down; at some places the boards were entirely gone; that the plaintiff, who was a school teacher in one of the public schools, in going from her boarding house to her school, would have to and did go over this walk. She had been boarding and teaching school there for some four or five months previ-ous to the accident. This sidewalk was one of the most traveled portions of the thoroughfare in the city. This was the testimony of a witness for plaintiff, he repeating, under cross-examination, that the condition of the side-walk along the place of the accident was known to every-body. One of plaintiff's witnesses testified that he did not consider that it was particularly dangerous, but its condition was apparent to anyone stepping on the boards; they would rattle; quite a number of them were displaced. There was also testimony to the effect that the city officers were in the habit of passing over this sidewalk and presumably knew its condition. Be-yond this there was no proof of actual knowledge brought home to the city authorities. It was a board walk, built of cypress lumber, with three stringers from an inch and a half to two inches thick, some of them, probably, a foot wide. The boards were of different size and about five feet long; at some places the boards were entirely absent. The walk was in such condition, said one of the witnesses, that the officers charged with the maintenance of it could easily ascertain its condition; anyone passing along the street could see that it needed repairing. This witness was asked if he knew what salary the plaintiff was receiving as school teacher. This

was objected to on the ground that there was no pleading
to justify any testimony of that kind.   Counsel for plain-
tiff stated that he offered it for the purpose of showing
that it ought to be considered by the jury to ascertain
what the loss of time damaged her, if any.   The question
was permitted to be asked, counsel for defendant object-
ing and excepting to the ruling of the court.   Witness
answered that plaintiff was receiving in the neighbor-
hood of $45 a month as salary as a teacher.   A witness
for the defendant, a lady who was with her at the time
of the accident, testified that she and plaintiff were
walking along the sidewalk together, and she (witness)
had stepped in front of the plaintiff and stepped on a
loose plank and it flew up and one end of it struck plain-
tiff on the lower part of her left limb.   The accident oc-
curred between 6 and 6:30 on an evening in January.
They were walking along at an ordinary walking gait.
This lady testified that everyone who used the sidewalk
knew that it was shackly and unsafe, boards were loose;
planks gone; the loose planks looked like they were good
but they did not have any nails in them; that was the
kind of plank, said this witness, that caused the trouble;
it was one that seemed to be nailed down; she had step-
ped on it and it flew up and struck plaintiff.   Plaintiff
herself testified that at the time of the accident, she was
a teacher in the primary school at New Madrid; that she
had to stop teaching because she was crippled; had been
down town with another lady getting her mail and was
returning home when she received the injury complained
of.   She testified that when they got to the bad walk,
that is the bad places in the walk, it was dark and she
took her time over that, going slowly, and was walking
behind her companion, and when they got up to where
the walk was all good her companion said something to
her and waited until plaintiff caught up with her, when
her companion started forward and stepped on the end
of the board which threw it up and it struck plaintiff on
the leg; struck her on the tibia of the left limb.   The

effect of the blow was to produce suffering and pain and it injured the nerves a good deal. She was attended by a couple of physicians and surgeons, one of whom was a Dr. Dawson.

This accident occurred in January, 1907, and plaintiff was then engaged in teaching school. The injury prevented her teaching and she was out of her school the rest of that winter, that is the rest of the scholastic year of 1907. There is no evidence in the case as to when the scholastic year closed, but plaintiff testified that she was out of school the rest of that winter, that is, from the time of her hurt in January until she left New Madrid on the 9th of March of that year. The testimony that her salary was forty-five dollars a month as a school teacher was given over the objection and exception of defendant as not within the issues of the case. She was still suffering from the injury; is thirty-five years old and that her means of livelihood is derived from teaching school. There was no testimony in the case as to whether her pay as a teacher was stopped, or when stopped, or how much of it was withheld. On cross-examination, plaintiff testified she had lived in New Madrid about six months prior to the accident. In going from her boarding house to the schoolhouse, she passed over this piece of walk where she was injured; went over it quite a number of times but could not say frequently. The walk "was in a desperate condition," and she knew that; knew that part of it was bad, but didn't know that the balance of it where she was hurt was bad; knew that the part of the walk from what is known as Field's Hotel to the Mississippi river was bad; it was between these points that she was hurt; part of it was bad and part of it up near Dr. O'Bannon's looked like it was pretty good walk. The boards were laid across it and she did not know that any boards were loose. The boards where she was hurt were in good condition, as she thought; did not see anything about the board that was stepped on to indicate that it was bad.

Asked if it is true that it looked to be all right, whether she could say that anybody else knew that it was bad or not, she said she did not know what other people knew, but so far as this particular place is concerned where she was hurt, it appeared to be all right. In going down town she had to pass over this same walk. Asked if it was not a fact that there was not a place on the walk between Dr. O'Bannon's and Mann's store for a distance of as much as 15 feet but what had a loose plank in it, she said she could not say as to that, was not over the walk enough to be so very familiar with it, but knew it was bad. Had no physician or surgeon to examine her limb until about two weeks after the accident, although her limb hurt her right along; it hurt her so bad the night of the accident that she did not sleep. The first week it was not so sore unless something rubbed against it.

A statement of Dr. Dawson, who attended the plaintiff, was admitted in evidence, to the effect that he had been called on by the plaintiff and found her suffering from a contusion of the lower third of the tibia, which resulted in inflammation of the periosteum, from which she suffered great pain, so much that the limb had to be kept in an elevated position for at least two weeks, which injury may result in necrosis of the bone.

This was practically all the evidence for the plaintiff.

On the part of the defendant there was testimony to the effect that the defective condition of the sidewalk was apparent to everybody. This was practically all the testimony in the case. After its conclusion defendant interposed a demurrer to the evidence which was overruled and defendant duly excepted.

At the instance of the plaintiff the court gave four instructions. The first is as follows:

"1. The jury are instructed that in this case the plaintiff, Kate L. Howard, seeks to recover damages for injuries alleged to have been received by her on ac-

count of a defect in a sidewalk on Main Street in the defendant city of New Madrid, which it was the duty of the city to keep in repair. Her claim is based upon the negligence of the city in not repairing the defect, and her injury resulting therefrom. The city by its answer denies both the negligence and the injury. Under the evidence, it is for you to determine both of these questions. It was the duty of the city to keep the sidewalk in repair; the plaintiff had the right to presume that this duty had been performed and that the sidewalk was in safe condition for the use of the public."

The second instruction told the jury, in substance, that the defendant as a corporation "is bound by law to use all reasonable care, caution and supervision to keep its sidewalks in a safe condition for travel in the ordinary mode of traveling by night as well as by day; and if it fails to do so after having notice, express or implied, of any defect, it is liable for any injuries sustained in consequence of such failure, provided the party injured exercised reasonable care and caution, and the fact that the plaintiff may in some way have contributed to the injury sustained by her will not prevent her recovery, if by ordinary care she could not have avoided the consequences to herself of the defendant's negligence."

The third instruction, in substance, told the jury that if they believed from the evidence that the defendant did not exercise reasonable care, etc., over its sidewalk, "to keep it in good and safe condition, and by that means allowed it to become defective and unsafe, and if the jury further believe from the evidence that the plaintiff, in attempting to walk along that portion of the sidewalk, by reason of such defect was injured, and has sustained damages thereby as charged in the petition, and that she was, at the time, exercising reasonable care and caution in walking on said sidewalk, then the defendant is liable."

The fourth instruction told the jury that they should assess plaintiff's damages, if they found for her, "at such sum as they believe from the evidence will compensate her for the injuries sustained by her as shown by the evidence, if any, and in estimating such damages the jury will take into consideration not only the physical injury inflicted, the bodily pain and mental anguish endured and suffered, if any, and her inability by reason of said injuries to perform her ordinary avocations of life, but may also allow for such damages as it appears from the evidence as to the nature and extent of her injuries will reasonably result to her therefrom in the future, not to exceed the sum of $10,000, the amount sued for."

The court instructed that under the evidence there could be no punitive damages awarded, and refused two instructions which the defendant asked but which its counsel now admit were properly refused.

At its own instance, the court instructed the jury that although they might believe from the evidence that defendant failed to exercise ordinary care in keeping the sidewalk in repair at the place where the injury to plaintiff is alleged to have happened, and that but for such negligence the injury would not have happened, yet the plaintiff could not recover in this suit, if she was aware of the condition of the sidewalk which occasioned the injury and failed to exercise ordinary care to avoid the accident that caused the injury. Defendant duly saved its exceptions to the giving of these instructions and at the conclusion of the case, the jury returned a verdict in favor of plaintiff in the sum of two thousand dollars. After an unsuccessful motion for new trial and in arrest of judgment and saving exceptions to the overruling of these motions, defendant has duly perfected its appeal to this court.

The foregoing full and accurate statement of the facts of this case was prepared by the Presiding Judge

of this court and will be adopted as the statement of the court. We desire only to add that it was conceded on the argument by the attorney for the city of New Madrid the sidewalk had long been in bad condition where the accident occurred, and it was further conceded in the brief for the city as follows:

"The facts in this case are substantially agreed upon. By that is meant that there was no actual dispute as to the condition of the sidewalk, and as to the knowledge of its condition by the plaintiff at, and prior to, the time that she alleges she received the injury.

"This sidewalk was on one of the main streets of the city and, it may be conceded, was generally used. It is further shown by the testimony that this lady knew of its defective condition; that it was a matter of universal knowledge, apparent to any and every one who used it. Indeed, had there been a red light or a warning signal placed at intervals of ten feet along that sidewalk, it would have served no more useful purpose as a warning to the general public and to this lady than was the universally known fact that said sidewalk was in a dilapidated condition."

The instructions for plaintiff were drawn carelessly and in some respects, inaccurately. She had no right to presume the city had done its duty in keeping the sidewalk in repair, when she knew it was in bad repair; and in saying she had the right so to presume, the first instruction was faulty. Neither is it the law that a city is bound, at all hazards, to keep its walks in safe condition for travel, but the obligation of the city is to use ordinary care to keep them in a reasonably safe condition for travel by day and night. But this imperfection in the instructions could not have had a prejudicial influence in view of the concession that the walk was out of repair, had been for months, and was known by everybody to be. The degree of care the city was bound to exercise, though overstated in the instructions, could have done no harm when it is admitted the city failed

Howard v. New Madrid.

to exercise that degree of care. Dilapidated walks with boards lying loose, nails out of the stringers, some of the boards displaced, show conclusively the city had not done its duty. In stating plaintiff might presume its duty had been performed by the city and that the sidewalk was in a safe condition for use, the court would have committed prejudicial error on the issue of whether plaintiff used due care for her own safety, if there was any evidence tending to convict her of contributory negligence. But there is none, in our judgment. All the testimony as to how the accident occurred goes to prove she and another woman were walking side by side, after dark along the sidewalk in going from the postoffice; that her companion stepped on the end of a loose board which flew up, catching plaintiff on the lower part of her limb and inflicting the injury complained of. Not a word of evidence nor a circumstance is in proof to show any carelessness in the way plaintiff was walking at the time, and hence there is nothing to show lack of care on her part contributing to her injury, unless the bare fact that she used this walk when she knew it was in bad repair has that tendency. And in truth this is the only negligent act of which the answer accused her; for it said nothing about carelessness in her manner of walking. If she was to be found guilty of contributory negligence for merely passing along the walk, then everybody in New Madrid was guilty of carelessness nearly every day, for it was proved, and even admitted, the walk was in constant use by the public notwithstanding its condition. In the brief for defendant the concession is made that the sidewalk was on one of the main streets of the city and in general use. The lack of ordinary care for one's own safety consists in failing to use the caution which persons of common prudence use, and if plaintiff only did what every one else did, as respects the use of the walk, it cannot be said she was negligent, unless we assume that all the citizens of New Madrid lacked common prudence. It is not the law that a per-

son acts negligently when he uses a sidewalk he knows is in bad repair, or will be barred from recovery for doing so if he uses it cautiously. Such an act is careless only in case the walk is so unsafe that no person of ordinary prudence would attempt to walk over it. This has been declared many times and we will quote an excerpt from Coffey v. Carthage, 186 Mo. 573, 85 S. W. 532, as quoted and approved in Heberling v. Warrensburg, 204 Mo. 604, 617, 103 S. W. 36, on the question: "If he (a citizen) knows of a defect and it is not so obviously dangerous that no prudent person would attempt to use the street, he may still use the street provided he exercises that care which a reasonably prudent person would in like circumstances; but he is not bound, merely because he encounters a defect which a reasonably prudent man would think he could pass by the exercise of care, to avoid the street entirely." Though this sidewalk was out of condition, there was nothing tending to prove it was a desperate act to walk over it. Hence the second and third instructions requested by defendant were rightly refused.

Furthermore, the court in several instructions for plaintiff, required the jury to find as a condition on which a verdict might be awarded in her favor, she could not, by ordinary care, have avoided the consequences to herself of the defendant's negligence; and again, she could not recover unless the jury found "she was not at the time exercising reasonable care and caution in walking on said sidewalk." In an instruction given of the court's own motion, the jury were told plaintiff could not recover if she was aware of the condition of the walk and failed to exercise ordinary care to avoid the accident which caused the injury, though they might find defendant had failed to exercise ordinary care in keeping the walk in repair at the place where the injury happened, and might further find the injury would not have happened but for such negligence. A finding that plaintiff was in the exercise of due care was undoubted-

ly exacted from the jury, whether it was necessary to do so or not; that is to say, even if there was no evidence tending to prove she was guilty of negligence contributing to her injury.

Great complaint is made that the damages were excessive, but we think they were moderate. Plaintiff testified she was still suffering from the injury at the time of the trial in October, 1908, nearly two years after the accident. She was disabled from pursuing her vocation for nearly a year and testified that when she resumed teaching she did so against the opinion of her physician. The only point of doubt is whether the court should have received evidence concerning the salary paid to her as a teacher, when the petition did not allege loss of time or earnings. The jury were not authorized in the instruction on the measure of damages to assess damages for loss of time and earnings, and we hold said item of evidence, whether rightly admitted or not, should not work a reversal of this judgment.

The judgment is affirmed. All concur.