# JOHN J. SWAILS, Respondent, v. CITY OF CARUTHERSVILLE, Appellant.

**St. Louis Court of Appeals.   Argued and Submitted June 8, 1911. Opinion Filed June 30, 1911.**

1. **APPELLATE PRACTICE: Admission of Evidence: Prerequisites to Review.** The propriety of the admission of evidence volunteered by a witness will not be reviewed on appeal, where no objection was made or exception saved to its admission nor a motion made to exclude it.

2. **MUNICIPAL CORPORATIONS: Defective Sidewalk: Injury to Pedestrian: Pleading: Sufficiency of Petition.** A petition, alleging that while plaintiff was walking along a sidewalk on a public street in defendant city he was tripped and his left foot wrenched and broken, by reason of one of the planks of the sidewalk not being nailed down but being loose and liable to easy displacement, charging negligence on the part of the city in permitting the walk to remain in an unsafe condition for travel and that the city authorities knew or by the exercise of due care could have known of its dangerous condition, and claiming damages, states facts sufficient to constitute a cause of action.

3. ———: ———: ———: **Contributory Negligence.** In an action for personal injuries received by reason of a defect in a sidewalk, the fact that plaintiff noticed there was a defect in the walk several hours before he was injured would not convict him of contributory negligence as a matter of law, where the defect was not of such a character as to show that it was dangerous to use the sidewalk for its intended purpose.

4. ———: ———: ———: **Instructions: Presumption.** In an action for personal injuries received by reason of a defect in a sidewalk, where plaintiff admitted he had seen the defect several hours before he was injured, the court instructed the jury that a pedestrian might presume that the sidewalk on which he was traveling was in a reasonably safe condition, and that he was not required to travel along the same looking for defects but was only required to use ordinary care. At defendant's instance, the court charged that the failure on the part of defendant to keep its sidewalks safe for travel does not excuse or exonerate travelers from exercising common and ordinary care to avoid injuring themselves, and that if the jury believed plaintiff's own negligence contributed in any degree to his injury, their verdict must be for defendant, and

that if the jury found that, at the time of plaintiff's injury, he was a cripple, that fact would not excuse him from exercising ordinary care, but he was required to be more vigilant and cautious, so as to compensate, as far as possible, for his enfeebled or crippled condition. *Held*, that, in view of the evidence as to the condition of the sidewalk and in the light of the instructions given at the instance of defendant, the instruction given for plaintiff was not prejudicial error. (NORTONI, J., dissenting.)

5. **NEGLIGENCE: Contributory Negligence: Care Required by Cripple: Instructions.** A cripple need be no more on the lookout for hidden pitfalls than a sound person, and hence an instruction, in an action for personal injuries negligently inflicted, that if danger of injury to plaintiff was enhanced by reason of his being a cripple, he was required to be more vigilant and cautious, so as to compensate, as far as possible, for his enfeebled or crippled condition, in order that he might protect himself from danger, is erroneous.

6. **MUNICIPAL CORPORATIONS: Defective Sidewalk: Injuries to Pedestrians: Case for Jury.** In an action for personal injuries received in a fall on a defective sidewalk, *held*, the case was one for the jury.

7. **APPELLATE PRACTICE: Conduct of Counsel: Insinuations not Proven.** Counsel in their briefs in the appellate court should not indulge in insinuations derogatory to the adverse party, unless supported by the record, nor in slurring reflections on opposing counsel.

Appeal from Pemiscot Circuit Court.—*Hon. Henry C. Riley*, Judge.

AFFIRMED.

*Vance J. Higgs* for appellant.

(1)    The law is most certainly clear that a person cannot close his eyes to danger and reap damages for injuries resulting from his failure to see and observe. Ryan v. Kansas City, 134 S. W. 567; Wheat v. City of St. Louis, 179 Mo. 581; Kaiser v. City of St. Louis, 188 Mo. 374; Coffey v. City of Carthage, 186 Mo. 585; Cohn v. City of Kansas, 108 Mo. 393; Woodson v. Metropolitan Ry., 224 Mo. 704; Evans v. Railroad, 178

Mo. 517; Brocksmidt v. Railroad, 205 Mo. 447. (2) It is well settled that the city cannot be held liable for an accident where it did not know of the defect or by the exercise of reasonable diligence could not have found it out, even though the party injured was not guilty of negligence and did not contribute to his injury. Carvin v. City, 151 Mo. 334.

*Von Mayes, Ward and Collins,* and *J. E. Duncan* for respondent.

(1) Plaintiff's manner of passing over this sidewalk that night was not negligence as a matter of law. Beauvois v. St. Louis, 169 Mo. 503; Graney v. St. Louis, 141 Mo. 180; Chilton v. St. Joseph, 143 Mo. 199; Taylor v. Springfield, 61 Mo. App. 264; Bradley v. Spickardsville, 90 Mo. App. 421; Ryan v. Kansas City, 134 S. W. 566; Chast v. Railroad, 134 Mo. App. 662; Barr v. Kansas City, 105 Mo. 550. (2) The evidence shows the walk was in bad condition and had been for some months. The law presumes that in that length of time the city officials knew, or by the exercise of ordinary care could have known, of the defects. Buckley v. Kansas City, 95 Mo. App. 188; Barr v. Kansas City, 105 Mo. 550; Maus v. City of Springfield, 101 Mo. 613; Young v. Webb City, 150 Mo. 342; Cropper v. City of Mexico, 62 Mo. 387.

REYNOLDS, P. J.—The petition in this case charges that while plaintiff was walking along the sidewalk on a public street in the city of Caruthersville, he was tripped and his left foot wrenched and broken by reason of one of the planks or boards of the sidewalk not being nailed down, but being loose and liable to be easily displaced. Charging that it was negligence and carelessness on the part of the city to permit the walk at that point to be and remain in an unreasonably safe condition for travel and that the city authorities knew or by the exercise of due care could

have known of the dangerous condition of the walk, he asks damages for the sum of $2000.

The answer, admitting incorporation but denying the other allegations of the petition, pleads negligence on the part of plaintiff, directly contributing to the injury.

A general denial of this was interposed by reply.

There was a trial before the court and a jury. At the beginning of the introduction of testimony on the part of plaintiff, defendant objected to the introduction of any testimony for the reason that the petition does not state facts sufficient to constitute a cause of action. This was overruled and plaintiff excepted.

As a witness in his own behalf plaintiff testified that he lived at the town of Hayti and was in Caruthersville on the night of the 21st of January, 1909, intending to take a train for his home which was due to pass Caruthersville sometime between 11 and 12 o'clock that night. He walked down the sidewalk of Charles street, on which the railroad station is situated. The train was late that night and as he was going along the sidewalk of that street, walking as fast as he could, he came to where there was a loose plank in the sidewalk, over and on top of which another plank had been put. This was directly in front of a saloon or restaurant. The plank of the sidewalk was thin and another plank had been put on top of it. The under plank had got off of the sill or runner and got kicked in under the top plank, so that it "popped up," as he said, or raised above the surface of the other planks. As plaintiff made a quick step he shoved his foot in under this plank, his foot caught and he was thrown forward and fractured his foot. These planks were not nailed down and the end of one had been burned off. Plaintiff did not think there was any light there at that time; did not see the plank and its condition; was not paying any attention to it. The first

knowledge he had that the planks were loose was when he threw his foot in and fell. There was no light up and down the street. It was a dark night and all the light that was shining there was out of the saloon building, which was directly opposite this place in the sidewalk the light shining out of the front windows of the saloon. He fell with his full force and could not catch himself and was crippled and still has to walk with a stick. The injury was across the left foot, which was the one he ran under the plank. Plaintiff was helped on the train when it came along and off again when the train reached his home, when he got some crutches and went to his house. Plaintiff suffered great pain; his foot was black and swollen, the discoloration extending to his ankle; was confined to the house about two weeks and then got on crutches; had a couple of physicians attending him and used his crutches until some time in April; his foot pained him from that time on and still pains him occasionally; lost a month and a half's time from his business and incurred bills for the surgeons amounting to something like fifteen dollars. On cross-examination he stated that he was walking as fast as he could when he got hurt; at that time and since he was six months old he was compelled to walk with the side of his foot rather to the front; when he was six months old he received an injury to his hip. Plaintiff was walking fast when he got hurt, in a hurry to catch the train. There was a street light in the vicinity but plaintiff did not think it was burning, although he would not be positive. He had come to Caruthersville that evening about four o'clock and gone over this same walk; at that time there was a loose plank along there; could not say whether it was at this same place exactly but right along there, and to his best judgment thought the loose plank was at the same place where he fell that night. Asked why he was not looking out for this loose plank and

why he did not see it when he went back over it, plaintiff said he was walking along, "just like you walking along and not expecting the plank to be out of place." At four o'clock that same day he had seen the loose plank lying there; it was lying upon this place and was loose; thought he stepped on it and it was all right. Asked if this plank had entirely covered the hole through which he had stepped at night, he said it "lacked an inch or two." The hole, however, was not big enough for him to run his foot through. After he was hurt he turned around to see what had hurt him and he saw the planks there. He had been looking when he was walking along and he looked after he got up; he might have seen the hole; could have seen it. When he was walking along that night he was walking with his head up. Plaintiff had seen the loose plank on the sidewalk at four o'clock when he walked over it and knows it was somewhere along there. At night when he fell over the plank he "wasn't paying any attention to the walk." When he got up after his fall both the planks were on his foot and he looked back and saw the hole; does not know what kicked the plank out of there; had come to town and walked over the sidewalk every two or three days; was familiar with it and its condition; had been going over it ever since it was built. On redirect examination he repeated that he was familiar with the walk and knew its dangerous condition. When he passed over the sidewalk at four o'clock that evening the planks were not in the shape they were in at night; not in the condition they were in that evening; meaning, as we understand it, that when he went over it at four o'clock that afternoon and long before that, while they were liable to be put in the condition in which they were at night by pedestrians passing over them, they were not tilted, one end up. On recross-examination plaintiff stated that he had passed over the walk at four o'clock and saw the loose plank as he came over it and that it was

liable to be misplaced; that when he came back over it at night he did not make any examination to see whether the plank had been misplaced or not. This was practically the testimony of plaintiff in direct, cross, redirect and recross-examination. He also testified to having pointed out the place where he fell to two or more of his witnesses.

Witnesses produced on part of plaintiff testified to their knowledge of the condition of the sidewalk in front of the restaurant or saloon; that it was in bad condition about the place where plaintiff was supposed to have been hurt; the plank was loose and had been that way for some time, possibly two weeks. There was a hole in the walk that "the boys chopped out to get out a dime."

There was also testimony that the city officials had frequently walked over the sidewalk and that any of them walking over it could see the condition in which it was if they had gone there to inspect it; "they did see it," said one of the witnesses. It was in evidence that the railroad company had built a track along and through this street, down the center of it, and that this walk was on the right of way of the railroad; that the city had ordered the railroad company to build a concrete sidewalk along there but this had not been done, nor had the city built one itself. The street was there before the railroad was built, the city permitting the railroad to run its line down through it. It was also in evidence that this sidewalk on which the accident occurred is one of the main travelled sidewalks of the city, the main one, with one exception, and has been a used and permanent street for about nine years.

One of the witnesses testifying for plaintiff, said that he was acquainted with the sidewalk where plaintiff was said to have been injured; that it was in pretty bad condition; that the planks were loose and there was a hole in it; that the planks that the sidewalk was made out of were two-inch planks and they had taken

two planks to make the sidewalk even with the regular sidewalk; that he had seen people come there and catch their feet in there and almost fall and had heard them "cuss a good deal about it." When the witness made this statement, one of the counsel for defendant said to him, "you need not tell that." Beyond this caution there was no objection made to this testimony of this witness and no exception saved to its introduction. This witness testified that after plaintiff had been hurt he had gone out and fixed the walk himself; did not know how long it had been in that condition. Plaintiff had pointed the place out to him and told him that it was the place where he had been hurt. The planks he was speaking about were laid one on top of the other, both of them loose; had never called anyone's attention to the condition of the walk.

One of the physicians who had attended plaintiff testified to the nature and extent of his injuries.

At the close of plaintiff's testimony defendant interposed a demurrer which was overruled, defendant excepting.

Whereupon defendant introduced various officers of the city of Caruthersville and other persons, who testified they had walked over the sidewalk many times prior to the injury, the city officials testifying that they had not noticed the defect in the sidewalk nor had their attention ever been called to any defect before the accident.

The night-watchman for the city testified that he had kept a record of the public lights that were not burning in the city during this month of January and that his record failed to show that on this particular night any of the lights were out or were not burning.

There was no evidence in rebuttal by plaintiff. At the close of all the evidence defendant again interposed a demurrer which was overruled and exceptions saved.

At the request of plaintiff the court gave four instructions. No. 1 is to the effect that if the jury found from the evidence that on the day named, plaintiff, while walking along and over this sidewalk, caught his foot under a loose plank or loose planks in the walk and his foot was injured thereby, and that at the time plaintiff was exercising ordinary care, and that the walk at that place was not at that time in a reasonably safe condition for travel by reason of the loose plank or planks, and that such condition was known to defendant or might have been known to it had it exercised ordinary care in inspecting the walk, and that such condition in the walk had existed a reasonable length of time prior to the injury for defendant to have repaired the same, then plaintiff was entitled to recover.

The second instruction was as to the measure of damages.

The third instruction was as follows:

"The court further instructs the jury that the plaintiff, as pedestrian, traveling along and upon the sidewalk in controversy, had a right to presume that said sidewalk was in a reasonably safe condition, and he was not required to travel along same looking for defects, but was only required to use ordinary care," and "ordinary care" was properly defined.

The fourth instruction told the jury that one defense to the action is the contributory negligence of plaintiff, and on this issue the court told the jury that the burthen of proving plaintiff's injury was occasioned by his contributory negligence was upon defendant. Exception was duly saved to the giving of these instructions.

At the instance of defendant the court gave seven instructions and refused one, marked "Defendant's Instruction No. 2."

The first instruction given told the jury that as plaintiff confined his allegation of negligence to the

act of permitting a certain plank to become displaced or removed from its proper position in the sidewalk and not nailed down, they were not to take into consideration in making up their verdict, evidence as to any other defects in the sidewalk; that defendant is not liable for damages for injuries occasioned by latent or hidden defects in the sidewalk, in the absence of actual knowledge thereof by its officers, "so, in this case, there being no proof of actual knowledge by the defendant's officers of the defect complained of, if you find and believe from the evidence that the defect was a latent or hidden one, that is, one not open, obvious, palpable and such as would not attract or arrest ordinary attention, then your verdict will be for defendant." And further, although the jury might not believe that the defect was latent or hidden at the time of the injury, before they could find for plaintiff they must believe and find from the evidence "that the defect was open, palpable and observable for such a length of time before the injury as that defendant's proper officers actually knew of such defects, or could have known thereof by the exercise of ordinary care to detect and repair the same."

Instruction No. 3, given at the instance of defendant, told the jury that defendant city does not become the insurer of persons using its streets and sidewalks but that its officers are only required to exercise ordinary care to detect and repair defects in its streets and sidewalks, and that the mere fact that a person is injured by a fall occasioned by a defective sidewalk is no evidence of itself that the city was negligent in keeping such sidewalk in repair.

Instruction No. 4 told the jury that the burthen of proof was on plaintiff to establish his case by the preponderance or greater weight of evidence and if he has not done so the jury must find for defendant and negligence will not be presumed but it devolves upon plaintiff to prove it.

The fifth instruction told the jury that defendant was not liable in any sum whatever unless, through its proper officers, it had actual knowledge before the injury complained of, of the defects, if any, in the sidewalk causing such injuries and the burthen of proof is upon plaintiff to prove such knowledge.

The sixth instruction told the jury that while it was the duty of defendant city to keep its streets and sidewalks free from obstructions and reasonably safe for travel, the failure to perform this duty does not excuse or exonerate travellers on its streets or sidewalks from exercising ordinary care and caution to avoid injuring themselves, "so, if you believe from the evidence that the defendant's officers and agents failed and neglected to keep the sidewalk in question in proper repair, yet if you find and believe from the evidence in this case that plaintiff's own negligent acts and conduct. contributed in any degree to his injury, your verdict must be for the defendant."

The seventh instruction told the jury that one traveling on the sidewalks of a city "cannot justify or excuse his own acts or negligence by permitting his mind to be absorbed in other matters and oblivious to defects in such sidewalks of which he is cognizant. So, if you believe from the evidence in this case that plaintiff was aware of the defective condition of the sidewalk in question and walked heedlessly along, as a result of which he was injured, you will find for the defendant; or, if you believe from the evidence that plaintiff's injuries were directly due to both his own failure to exercise ordinary care and prudence and also to the negligence of the officers and agents of the defendant in failing to keep the sidewalk in proper repair, then such joint negligence of the plaintiff and defendant defeats plaintiff's action and your verdict should be for the defendant."

The eighth instruction told the jury that before plaintiff could recover any amount in this case it must

believe from the evidence that he was at the time of his alleged injury in the exercise of ordinary care; and if the jury found that at the time he received the injury he was not exercising ordinary care and prudence for his own safety, their verdict should be for defendant, "and in this connection you are further instructed that if you find and believe from the evidence that the plaintiff at the time of the alleged injuries complained of was a cripple and danger to his locomotion and travel thereby enhanced, yet this did not excuse him from the exercise of ordinary care and prudence; but the law under such circumstances would require him to be more vigilant and cautious, so as to compensate, as far as possible, for his enfeebled or crippled condition, in order that he might protect himself from danger."

The second instruction which defendant asked and which the court declined to give was to the effect that if the jury found and believed from the evidence "that the plaintiff, at about four o'clock p. m., on the evening immediately before the accident, saw and observed that the plank in question was loose and not nailed down, and saw at that time that same was in a dangerous condition and liable to be displaced at any time, the plaintiff was guilty of such negligence as precludes a recovery in this case and your verdict should be for the defendant."

The jury returned a verdict for plaintiff in the sum of four hundred dollars. Defendant, interposing a motion for new trial and in arrest, and saving exceptions when they were overruled, has duly perfected its appeal to this court.

It is insisted by the learned counsel for appellant that the trial court erred in not sustaining the demurrers; that it erred in refusing to give its instruction No. 2; that the verdict is for the wrong party under the law and the evidence; that the court erred in admitting incompetent, irrelevent and immaterial testimony offered by respondent; that the judgment is erroneous

on the record. In a supplemental brief filed, it is also argued that the third instruction given at the instance of plaintiff was error.

The only erroneous admission of evidence to which our attention is called is that of the witness who testified that he had noticed the place where plaintiff was hurt and had seen persons fall over this hole and then heard them curse. This assignment is disposed of by saying that there was no objection made to this testimony when given, no exception saved to its admission, no motion made, after it had been volunteered by the witness, to exclude it.

We find no error supporting the assignment that the judgment is erroneous upon the record, if by that is meant that the petition does not state a cause of action. We have set out enough of the petition to show that it does state facts sufficient to constitute a cause of action.

Nor can the assignment of error in failing to sustain the demurrers be sustained. It is true that appellant in his testimony very frankly states that when he walked over this sidewalk at four o'clock on the afternoon of the day of the accident, he noticed there was a defect in it. The knowledge of this defect, however, was not in itself of such a character as to show that it was dangerous to step even on this plank or to walk along there and use the sidewalk for its intended purpose, that is for use of pedestrians going up and down the street from the main part of the city to the railroad station. It was a travelled sidewalk and we doubt if there are many sidewalks in any of the smaller cities of our state that are perfect in condition and free from all pitfalls. Pedestrians may notice them casually as they go along and use them in safety, and then be tripped up the next time they go over them, or happen to step on a different plank or even on the same plank. That does not in itself carry with it the idea that the wayfarer is guilty of contributory negligence on his part, nor

does it free the city from its obligation to keep its sidewalks in a reasonably safe condition for use by the public. The sidewalk in evidence in the case of Howard v. City of New Madrid, reported 148 Mo. App. 57, 127 S. W. 630, was in a much more notoriously and obviously defective condition than was this sidewalk on Charles street in Caruthersville. Our court, however, in that case held the city was liable for accidents to pedestrians travelling along it who were well acquainted with its condition, and who were exercising only ordinary care as pedestrians. In the Howard case, furthermore, at the instance of plaintiff there, the court told the jury (l. c. 64): "It was the duty of the city to keep the sidewalk in repair; the plaintiff had the right to presume that this duty had been performed and that the sidewalk was in safe condition for the use of the public." In that case we held that this instruction was erroneous, in that plaintiff there had no right to presume that the city had done its duty in keeping the sidewalk in repair, when she knew it was in bad repair; and in saying she had the right so to presume, this instruction was faulty. (l. c. 66). But we said in that case: "But this imperfection in the instructions could not have had a prejudicial influence in view of the concession that the walk was out of repair, had been for months and was known by everybody to be. The degree of care the city was bound to exercise, though overstated in the instructions, could have done no harm when it is admitted the city failed to exercise that degree of care."

It is true that in the case at bar we have no such admission, but in the light of the evidence in the case, given by disinterested witnesses as to the condition of this sidewalk, and in the light of the instructions which were given at the instance of defendant, we do not think this instruction was either prejudicial or harmful. The instructions given at the instance of defendant, especially the sixth and eighth, particularly cautioned

the jury that a failure on the part of the city to keep its sidewalks safe for travel, "does not excuse or exonerate travellers on its streets or sidewalks from exercising common and ordinary care and caution to avoid injuring themselves;" and if the jury believed "that plaintiff's own negligent acts and conduct contributed in any degree to his injury," their verdict must be for defendant. And again, if the jury found and believed from the evidence that when plaintiff received his injuries, "he was not exercising ordinary care and prudence for his own safety," their verdict should be for defendant. The jury were further told in this eighth instruction, from which the last quotation is taken, that if they found from the evidence that at the time of the alleged injuries plaintiff was a cripple and danger to his locomotion and travel thereby enhanced, yet this did not excuse him from the exercise of ordinary care and prudence; but the law under such circumstances would require him to be more vigilant and cautious, so as to compensate, as far as possible for his enfeebled or crippled condition, in order that he might protect himself from danger. Certainly these instructions were as favorable as defendant would ask. This latter part of the eighth instruction goes beyond anything we have seen as to the obligation of an unfortunate cripple to look out for himself. As it would be understood by common and ordinary minds, it would seem to mean that a cripple must be more on the lookout for hidden pitfalls than a sound man. We know of no such rule and are referred to no authority for its support. In brief, whatever error may have been in this third instruction given at the instance of plaintiff, was fully cured by the extreme caution impressed upon the jury by these other instructions given at the instance of defendant.

The second instruction which was asked by defendant and refused was properly refused. It is not true that the mere fact that at four o'clock in the after-

noon of the day of the accident plaintiff saw that the sidewalk was defective, the plank loose and not nailed down, even if he then knew it was in a dangerous condition and liable to have been misplaced at any time, which latter facts, by the way, are not in evidence, plaintiff is guilty of such negligence as precludes a recovery. It might well be that he even saw the loose plank, knew where it was, did not realize it was dangerous, and that in passing over it at night, as he had a right to do, he was not aware that he was about to step into this pitfall. It might have appeared safe at four o'clock and when not trodden on, when in point of fact it was unsafe and plaintiff not have been aware of that fact.

After all, this was a case for the jury; they heard the testimony, saw the witnesses, and in the main were correctly instructed, certainly very favorably to defendant.

Counsel for appellant, in brief and printed argument, seems to insinuate that plaintiff was intoxicated and so brought on his hurt; it is even intimated that he did not receive his hurt at the place at all. The verdict is assailed as the result of prejudice of the jury against the city. Such insinuations and charges are very grave and very serious. Counsel appearing to this court under their reponsibility as sworn officers of the court, should not indulge in them unless supported by matters of record in the case. There is not a word in this record to support these intimations and charges. Nor are the slurring reflections upon opposing counsel either seemly or justifiable.

The judgment of the circuit court is affirmed. *Caulfield, J.*, concurs. *Nortoni, J.*, dissents on grounds stated in a separate opinion.

DISSENTING OPINION.

NORTONI, J.—In view of the fact that plaintiff passed over the walk at four o'clock in the afternoon and admits he then noticed a defect therein—a loose plank at the place he was injured—I am of opinion the court erred in giving his third instruction. Notwithstanding the knowledge which plaintiff had acquired only a few hours before as to the loose plank, in this instruction the court told the jury as a matter of law that he had the right to presume the walk was in a reasonably safe condition and was not required to look out for defects. This cannot be sound, for, having knowledge of the defect, he may not presume it not to be present and go forward as though the walk were reasonably safe. On the contrary, ordinary care in the circumstances of the case suggests plaintiff should look out for the loose board. In my opinion, both the question of defendant's negligence and that of contributory negligence on the part of plaintiff were for the jury; but the instruction mentioned is an erroneous declaration of the law. [See Howard v. City of New Madrid, 148 Mo. App. 57, 127 S. W. 630.]