ODUS BRADLEY, Respondent, v. NORTHERN CENTRAL COAL COMPANY, Appellant.

Kansas City Court of Appeals, November 25, 1912.

1. NEGLIGENCE: Master and Servant: Defective Machinery. Plaintiff, a miner, was operating a coal mining machine when one of the links of a heavy wrought iron feed chain broke and a piece of it struck him in the leg. The chain had become worn and dangerous and defendant knew its condition. It is *held* that a consideration of all of the evidence warranted the submission of the case to the jury.

2. ———: ———: Assumed Risks. The rule is now firmly embedded in our laws that the servant does not and cannot assume the risks caused by the master's negligence.

3. ———: ———: Knowledge of Defect. There is a vital difference between knowledge of the extent and character of a danger and knowledge of a defect in which lurks a danger, the extent and imminence of which is not discoverable to the servant by the reasonable use of the opportunities his situation affords.

Appeal from Randolph Circuit Court.—*Hon. A. H. Waller,* Judge.

AFFIRMED.

*W. P. Cave* for appellant.

*F. E. Maxwell* and *M. J. Lilly* for respondent.

JOHNSON, J.—Plaintiff sued to recover damages for personal injuries he alleges were caused by negligence of defendant. He prevailed in the. circuit court and the cause is here on the appeal of defendant. The facts of the case are as follows: At the time of the injury, March 20, 1912, defendant was operating a coal mine in Randolph county and plaintiff, an experienced miner was emplowed in the mine and was engaged in operating a coal mining machine. One of the links of a heavy wrought iron chain, called a feed chain and used in drawing the machine forward, broke while the machine was in operation and a broken end was thrown violently against plaintiff, who was standing near the place of the breaking, and the small bone of one of his legs was fractured.

The feed chain was sixty feet long and its links were an inch and a half long and made of round wrought iron rods five-eighths of an inch in diameter and when new its pulling strength was fourteen thousand pounds. The machine attached to the chain was an electrical cutting machine the main parts of which were a powerful motor, a system of sprocket and pulley wheels through and around which the feed chain passed and a cutter bar. The feed chain "threaded" through the machine by being coursed around the various pulleys and sprocket wheels, was firmly anchored at each end and the machine was moved forward by means of the motor revolving in the sprocket wheels, the teeth or sprockets of which engaged the links of the chain. In short, the machine traveled by pulling itself along the feed chain and the chain carried the machine as well as its load which consisted of the resistance offered to the work of the cutter bar. It was the office of the bar to undermine the ledge of coal by cutting out the underlying and supporting material and the ordinary working load carried by the feed chain when the machine was cutting through dirt or soapstone was about four thousand pounds.

When the cutter encountered harder substances the load was increased and when it struck hard rock or sulphur it was necessary to remove the cutter as it could not work in such substances and the attempt to go on would result either in breaking the chain or some part of the machine. The operator could tell by the hum of the motor the character of the resistance opposed to the cutter and by moving a lever which controlled the power could stop the machine instantly. There was also a fuse which would blow out and shut off the current when the strain on the machine became too great and in addition to these safety and regulatory appliances there was a friction nut by which the attachment of the machine to the feed chain could be regulated on a scale varying from zero or no attachment to "positive" which firmly engaged the sprockets with the links of the chain in a manner to prevent any slipping. The friction nut was set periodically by the electrician employed by defendant and usually was kept at the point where the sprocket teeth would not engage the links when the total load exceeded seven thousand pounds. Plaintiff states that he was forbidden to change the position of the friction nut. Defendant denies this statement and contends that it was plaintiff's duty to use this appliance as one of the safety devices of the machine. For the purposes of the demurrer to the evidence which defendant insists should have been given, we shall accept the testimony of plaintiff on this subject, especially as it appears to be supported by a very plausible reason, viz.: the amount of plaintiff's wages depended on the quantity of coal taken out and it was found that the operators of machines, if allowed to manipulate the friction nut, were inclined to set it too high and thereby throw a greater burden on the machine than it could stand. In other words, to increase the output to the maximum, they would try to force the cutter through harder substances than the safety of

the machine and chain would permit. Hence the rule forbidding operators from touching the friction nut. In addition to these devices for safety and economy the evidence of defendant shows that the builders of the machine provided for the use of a feed chain which, though strong and powerful, would be much weaker than the weakest part of the machine, in order that the feed chain first would break and save the more expensive parts of the apparatus in the event of the machine being overloaded from any cause.

Breakages of the chain, therefore, were contemplated as possible and probable incidents of the life of the machine and we infer that a desire to minimize the natural dangers of such mishaps was one of the motives leading to the selection of wrought iron instead of steel chains. On account of the great resiliency of steel the recoil of a suddenly broken, tense chain of that material would be accompanied by peculiar dangers that could be avoided by the use of wrought iron chains which do not rebound under such conditions no matter how great the strain. The injury to plaintiff was not caused by a recoil of the chain. When the link broke it was passing over a revolving sprocket wheel and the chain end was propelled against plaintiff by motion it received from the wheel. The chain had been in service eight months and the evidence of plaintiff tends to show that it had become so worn and fatigued it could not stand the strain of ordinary work. It had broken repeatedly during the preceding month or six weeks, and defendant, on the complaints of plaintiff, had promised to provide another chain. Twice before the occasion in question it broke that day and had been repaired by the blacksmith. The machine had been running through soft material and had not been subjected to more than an ordinary strain. It had been carrying a load of about four thousand pounds, its safety strength had been rated and should have been rated

at seven thousand pounds and yet it kept breaking under the burden of half a load. The evidence of plaintiff tends to show that defendant had actual knowledge of this defective condition of the chain in ample time by the exercise of ordinary care to remedy the defect. The petition charges: "That said defendant carelessly and negligently failed and refused to furnish him with reasonably safe and sufficient tools, appliances and machinery with which to work, but on the contrary negligently and carelessly furnished him with dangerous, unsafe and insufficient tools, appliances and machinery with which to work, in that the feed chain of said mining machine was, at the time, and for a long time prior thereto had been, weak and insecure and incapable of sustaining the strain thereon when said machine was being operated, all of which was known, or by the exercise of ordinary care might have been known to defendant."

The answer is a general denial and pleas of contributory negligence and assumed risk.

Defendant owed plaintiff the duty of exercising reasonable care to provide and maintain a feed chain reasonably suited to the purposes of its intended use. The chain had become worn and dangerous and defendant, with knowledge of its condition, continued it in use after it should have been replaced if reasonable regard for the safety of plaintiff and his fellow workmen had been observed. Of the negligence of defendant there can be no serious question.

Counsel for defendant argue that the risk was one assumed by plaintiff. The rule now is firmly imbedded in our law that the servant does not and cannot assume risks caused by the master's negligence. [Curtis v. McNair, 173 Mo. 270.] It was inevitable and natural that breakages of the chain should occur on occasions of unusual and unavoidable stress on the machine and the risks of injury from such causes being natural and incidental to the service were assumed

by plaintiff as a part of his contract of employment, but the breaking of the chain was not intended to be an incident of the ordinary work of the machine and since defendant could not remain within the confines of reasonable care and compel its servant to work with a chain so defective as to be unsafe for ordinary usage so plaintiff, the servant, should not be held to have assumed a risk that obviously was caused by defendant's lack of due care.

Nor do we find good support in the facts and circumstances of the case for the contention of defendant that plaintiff was guilty in law of contributory negligence. Though he knew the chain was defective, he had the right to continue in the service provided a reasonably careful man in his situation would have concluded that he could work with the chain without subjecting himself to danger of immediate injury. We regard the question of whether the danger was so obvious and imminent as to convict plaintiff of contributory negligence as one for the jury. [Burkard v. Rope Co., 217 Mo. l. c. 480, and cases cited.]

There is a vital difference between knowledge of the extent and character of a danger and knowledge of a defect in which lurks a danger the extent or imminence of which is not discoverable to the servant by the reasonable use of the opportunities his situation affords. [Dodge v. Coal Co., 115 Mo. App. l. c. 506.] An ordinary breaking of the chain would have entailed small risk to plaintiff. It was the fortuitous breaking at the revolving sprocket wheel that caused the injury. The jury were entitled to the belief that such a risk was not one that was glaring and obvious and that threatened plaintiff with imminent danger, but was one that the wisdom and prudence of an ordinarily careful master would have anticipated and employed reasonable care to obviate. The demurrer to the evidence was properly overruled.

A close inspection of the record convinces us the case was tried without prejudicial error. Points made against the rulings on evidence and in the instructions given the jury are ruled against the contention of defendant.

The judgment is affirmed.

All concur.