JOSEPH GAMBINO, Respondent, v. MANUFACTURERS' COAL & COKE COMPANY, Appellant.

St. Louis Court of Appeals, February 3, 1914.

1. **MINES AND MINING: Safe Place to Work: Neck of Room.** The operator of a coal mine is required to exercise ordinary care to furnish miners with a reasonably safe passageway connecting the entries of its mine with the rooms in which the miners are working.

2. **APPELLATE PRACTICE: Binding Effect of Theory at Trial.** The party offering an instruction which concedes certain facts is bound by such concession, on appeal.

3. **MINES AND MINING: Injury to Miner: Safe Place to Work: Sufficiency of Evidence.** In an action by a coal miner for injuries received from rock which fell from the roof of the room neck connecting the room in which he was working with an entry, evidence that the operator was notified of the dangerous condition of the roof two days prior to the accident and had failed to repair the same, made a prima-facie showing of negligence on the part of the operator.

4. ————: ————: ————: **Assumption of Risk.** Where a room neck in a coal mine furnishing access from an entry to a room in which a miner is employed is in the care of the operator, the miner does not assume the risk of danger from falling rock from the neck as one of the risks of the employment.

5. ————: ————: ————: **Question for Jury.** In an action by a coal miner for injuries received from rock which fell from the roof of a room neck furnishing access from an entry to the room in which he was employed, *held*, under the evidence, that whether he was injured in passing through the neck from his room to the entry, or was injured while taking down the rock from the neck under employment so to do, was a question for the jury.

6. **MASTER AND SERVANT: Assumption of Risk.** The servant never assumes the risk of perils arising from the negligence of the master, but assumes only such risks as are ordinarily incident to his employment, after the master has performed his whole duty with respect to furnishing a reasonably safe place to work and reasonably safe appliances for performing the same.

7. **EVIDENCE: Admissions: Contradictory Statements of Plaintiff.** The determination of the scope of an admission made by the plaintiff while testifying should not be arrived at from a consideration of fragments of his evidence, but should be arrived at from a consideration of his testimony as a whole.

8. **MASTER AND SERVANT: Injury to Servant: Safe Place to Work: Contributory Negligence.** Although a servant knows of the existence of a defect in the place in which he is working and that some danger inheres therein, he is not guilty of contributory negligence as a matter of law in continuing to work in such place, provided a reasonably prudent man in his situation would have concluded that he could do so without subjecting himself to the danger of immediate injury.

9. **MINES AND MINING: Injury to Miner: Safe Place to Work: Contributory Negligence.** In an action by a coal miner for

injuries sustained by a fall of rock from the roof of a room neck furnishing access from an entry to the room in which he was employed, *held*, under the evidence, that whether plaintiff could have gone out of the room without passing under the rock which fell, was a question for the jury.

10. **APPELLATE PRACTICE: Harmless Error: Mines and Mining.** In an action by a coal miner for injuries sustained by a fall of rock from the roof of the mine, *held* that if evidence, to the effect that it was the operators' duty to timber the place in question and otherwise see to its safety, was inadmissible, its admission was not prejudicial to defendant, in view of the fact that it was conceded that such was the operator's duty in an instruction given at request.

11. **MINES AND MINING: Injury to Miner: Safe Place to Work: Instructions.** In an action by a coal miner for injuries sustained by a fall of rock from the roof of the mine, *held* that an instruction, to the effect that it was defendant's duty to use reasonable diligence to keep the place in a reasonably safe condition, was not vulnerable to the objection that it ignored evidence on the part of defendant which tended to prove that it was plaintiff's own duty to take care of the place, in view of the fact that an instruction given at defendant's request conceded that it was defendant's duty to take care of the place.

12. ————: ————: ————: ————. In an action by a coal miner for injuries sustained by a fall of rock from the roof of the mine, where his injury was not due to the failure of the operator to discover defects, but to the failure to remedy one already discovered and pointed out, an instruction that it was not plaintiff's duty to examine the roof to see that it was safe, but that he was entitled to rely on defendant to see that the place was kept reasonably safe, was not erroneous, on the theory that the testimony showed it was the custom of the miners to sound the roof for the purpose of determining whether or not it was safe, since the fact that a servant takes ordinary precautions for his own safety does not absolve the master from the performance of his duty with respect to proper inspection and maintenance of such places as are within his care and keeping.

13. ————: ————: ————: ————. In an action by a coal miner for injuries sustained by a fall of rock from the roof of a mine, where it was shown that plaintiff knew, or had reason to believe, that the roof inhered with danger, an instruction that it was not plaintiff's duty to examine the roof to see that it was safe, but that he was entitled to rely on defendant to see that it was kept reasonably safe, did not charge the jury that plaintiff might presume that the roof was safe, notwithstanding that he knew to the contrary, and go blindly about

his work, regardless of the danger, but merely charged that, under the circumstances, he was not required to make a thorough examination to discover the extent and imminence of the danger, and that, having reported the appearance of danger, he could rely upon defendant to perform its duty in the premises, to examine, if necessary, as to the extent and imminence thereof, and to seasonably remedy the defect, and hence the instruction was not erroneous.

*Held*, by NORTONI, J., dissenting, that the instruction was erroneous, in that it charged that plaintiff had the right to assume that defendant had rendered the place reasonably safe, when, as a matter of fact, he knew it was defective only a short while before; plaintiff having no right to presume a condition to be true which he knew in fact to be untrue.

14. **MASTER AND SERVANT: Safe Place to Work.** The master's duty with respect to furnishing the servant a reasonably safe place to work and reasonably safe means of ingress to, and egress from, the same, is a continuing one.

15. ———: ———: **Assumption That Master Has Performed Duty.** While no one has the right to rely entirely upon the performance by another of the obligation to exercise due care for his safety, to the extent of neglecting and disregarding the dictates of prudence, yet a servant may rely upon the assumption that the master has made a place reasonably safe, which was known to the servant to inhere with danger, provided the danger incurred by him in continuing to work at such place in the meantime is not so great that a man of ordinary prudence would not encounter it.

16. **INSTRUCTIONS: Erroneous Instruction: Cure by Other Instructions.** An instruction may be explained by other instructions, and omissions therein thus supplied or a partial view thereby supplemented, provided the whole are consistent and harmonious.

17. **MINES AND MINING: Injury to Miner: Safe Place to Work: Instructions.** In an action by a coal miner for injuries received from rock which fell from the roof of the mine, an instruction that it was not plaintiff's duty to examine the roof to see that it was safe, but that he was entitled to rely on defendant to see that it was kept reasonably safe, was not vulnerable to the objection that it was erroneous because it ignored evidence introduced by defendant to the effect that plaintiff had been employed to make the place safe and defendant had thereby discharged its full duty in the premises, for the reason that no such defense was pleaded in defendant's answer.

Gambino v. Coal & Coke Co.

18. **INSTRUCTIONS: Conformity to Issues: Pleading.** It is not necessary that plaintiff's instructions take into consideration and hypothesize upon a possible defense appearing from the evidence adduced, where such defense was not pleaded in the answer.

19. **MINES AND MINING: Injury to Miner: Assumption of Risk: Evidence.** In an action by a coal miner for injuries received from rock which fell from the roof of the mine, evidence that plaintiff was engaged in trying to make the place safe, at the time of the injury, under employment so to do, was admissible under a plea of assumption of the risk, although these facts were not specially pleaded as a defense.

20. ————: ————: ————: **Instructions.** In an action by a coal miner for injuries received from rock which fell from the roof of the mine, *held* that if the failure of an instruction given for plaintiff, covering the whole case, to refer to evidence tending to show that plaintiff was injured while undertaking to make the place safe, under employment so to do, which evidence was admissible in support of a plea of assumption of the risk, was error, such error was cured by an instruction, given at defendant's request, whereby the jury were specifically told that if they believed that plaintiff was injured while attempting to take down a rock, their verdict should be for defendant.

21. **APPELLATE PRACTICE: Harmless Error.** An objection by the defendant to an instruction given for the plaintiff in a personal injury action, relating to the question of plaintiff's contributory negligence, that, while it was "sound enough in a proper case," there was no evidence upon which to base it, could not be sustained, since, if the instruction was a sound one upon the issue of contributory negligence, then if there was no evidence upon which to base it, it must be because of a lack of evidence to convict plaintiff of contributory negligence.

22. **DAMAGES: Personal Injuries: Excessiveness of Verdict.** Plaintiff, while working in defendant's coal mine, was injured by rock which fell from the roof. His leg was broken at the ankle, so that the bone protruded, and the ankle was badly crushed. The injury was difficult to treat, and the limb was kept in a cast for three months after the swelling had been reduced so that it could be so incased. Plaintiff's physician, who was the only medical witness, testified that the limb would be permanently impaired, and that there would always be an enlargement about the ankle, with a stiffness and weakness in the joint. Plaintiff suffered much pain, and had not been able to do any work at the time of the trial, which was two years and six months after the accident. He was 43 years of age at the time of the injury, healthy and able-bodied, and testified

that he had been a miner for 14 years, and that his earnings amounted to from $50 to $75 every two weeks. *Held*, that a verdict awarding him $4500 was not excessive.

23. **APPELLATE PRACTICE: Harmless Error.** Under sections 2082 and 1850, R. S. 1909, although the instructions given in a case are not free from criticism, yet the appellate court should not reverse the judgment unless it "believe that error was committed against the appellant, materially affecting the merits of the action."

**NORTONI, J., dissents.**

Appeal from Knox Circuit Court.—*Hon. Charles D. Stewart,* Judge.

AFFIRMED.    CAUSE CERTIFIED TO SUPREME COURT.

*Higbee & Mills* and *Campbell & Ellison* for appellant.

(1) The court erred in overruling defendant's demurrer to the evidence. Plaintiff, while a witness, stated "the rock looked bad to him." He had known it was dangerous for two days. There was no promise of repairs or assurance of safety. Plaintiff is an experienced miner. His own evidence conclusively shows that he failed to take ordinary care to learn the imminence of the dangers which lurked in the roof or that he was carelessly indifferent to such dangers, in either of which events he is not entitled to recover. Roberts v. Company, 166 Mo. 378; Roddy v. Company, 104 Mo. 250; Watson v. Company, 25 Mo. App. 371; Steinhauser v. Spraul, 127 Mo. 563; Brady v. Company, 206 Mo. 527; Williams v. Company, 119 Mo. 324. (2) The court erred in giving plaintiff's instruction number one. This instruction told the jury that it was "Defendant's duty to use reasonable diligence to keep said entry and neck reasonably safe." The evidence on the part of the plaintiff tended to show that it was the defendant's duty to take care of the room neck. While the evidence on the part of the defendant tended to show that it was the duty of the plaintiff to take

care of the dangerous condition in the roof. The instruction, therefore, told the jury that the evidence of defendant was not true. The question as to whose duty it was to take care of the roof was one of fact for the jury. (3) The court erred in permitting plaintiff to introduce the character of proof offered by him for the purpose of proving that it was defendant's duty to take care of the room neck. Krueger v. Company, 84 Mo. App. 366. (4) The court erred in giving plaintiff's instruction number two. This instruction purported to cover the entire case and ignored the question that plaintiff was engaged in removing the rock and also ignores the defendant's evidence that it was plaintiff's duty to inspect and care for the room neck and it authorized the jury to return a verdict for the plaintiff, although they may have believed he was actually engaged in removing the rock or that he was under the duty to inspect and care for the passage way. In fact it told the jury that it was the defendant's duty to care for the passage way and "it was not the duty of plaintiff to examine said roof." McMahon v. Company, 132 Mo. 641; Raybourn v. Phillips, 160 Mo. App. 534; Hill v. Company, 140 Mo. 433; Scanlon v. Gulick, 199 Mo. 449. (5) The court erred in permitting the plaintiff to prove the custom in the mine, because custom is not pleaded. Nivert v. Company, 232 Mo. 626.

*J. A. Cooley* and *Jas. Dorian* for respondent.

(1) The demurrer was properly overruled. There is no assumption of risk in the case, under the now well-established rule in this State, and under the evidence it is clear the court could not declare plaintiff guilty of contributory negligence. Garard v. Coal Co., 207 Mo. 242; Jewell v. Bolt & Nut Co., 231 Mo. 176; Garaci v. Hill-O'Meara Com. Co., 124 Mo. App. 709,

followed in Bender v. Weber, 138 Mo. App. 547 and other cases; George v. Railroad, 225 Mo. 364; Obermyer v. Chair Co., 229 Mo. 97; Weldon v. Railroad, 93 Mo. App. 668; Rhea v. Railroad, 156 S. W. 1.    (2) Plaintiff's instruction No. 1, is correct.   This room neck had been "turned" and a room, that is, a working place, opened from it and worked back thirty-five or forty feet when plaintiff was employed to work there.   Clearly, as a matter, of law, it was part of the working place furnished by the master and which it was its legal duty to maintain, and which duty it could not shift, nor could a risk arising from failure to discharge it be assumed by the servant.   Defendant's sixth instruction expressly recognizes and tells the jury that it was defendant's duty to maintain its reasonable safety.   That it neglected to do so it concedes. Garard v. Mfg. Coal & Coke Co., 207 Mo. 242; Hanley v. Cal. Bridge & Const. Co., 47 L. R. A. 597; Highland Boy Gold Mining Co. v. Pouch, 124 Fed. 148.   (3)   No error was committed in the character of evidence admitted to prove that it was the master's duty to take care of the room neck.   Rowden v. Mining Co., 136 Mo. App. 376.   (4)   It is only necessary to plead a rule or custom when it is proffered or relied on as the basis of recovery.   Nivert v. Company, 232 Mo. 626; Brady v. Company, 206 Mo. 509.   When it is offered for probative purposes it is not necessary to plead it.   Brunke v. Tel. Co., 115 Mo. App. 36; Spencer v. Bruner, 126 Mo. App. 94; Gordon v. Railroad, 222 Mo. 516; White v. Railroad, 84 Mo. App. 411; Hunt v. Lead Co., 104 Mo. App. 377; Kane v. Company, 93 Mo. App. 209; Warren v. Townley Mfg. Co., 155 S. W. 850.  (5) The giving of plaintiff's instruction No. 2, was not reversible error.   This instruction required the jury to find among other things that plaintiff was at the time of his injury in defendant's employ mining coal—and that while in the discharge of his duty (as a coal miner) and while in the exercise of ordinary care on his part

he was injured, and that the injury was due to defendant's negligence specified. It was not necessary that it or any of plaintiff's instructions should submit the issue of contributory negligence, or assumption of risk, or any other of defendant's affirmative defenses —especially as all these defenses were fully submitted in defendant's instructions. Meily v. Railroad, 215 Mo. 567; Bowman v. Coal Co., 168 Mo. App. 703; Obermeyer v. Chair Co., 229 Mo. 97; Burdoin v. Trenton, 116 Mo. 358; Moore v. Railroad, 157 Mo. App. 53; Raybourn v. Phillips, 160 Mo. App. 534.

ALLEN, J.—This is an action for damages for personal injuries sustained by plaintiff while in the defendant's employ, alleged to have accrued to him through the negligence of defendant. Plaintiff recovered and the defendant appeals.

At the time of plaintiff's injury, to-wit, December 18, 1908, defendant company owned and operated a coal mine in which plaintiff was employed by it as a miner. The mine was operated by "driving" certain "entries," from the sides of which "rooms" were opened in which the miners worked. In opening such a room, a passageway would be cut a few feet in length, which was termed the "room neck," and which was thereafter utilized in passing to and from the room which would afterwards be opened beyond it. It seems that but one miner worked in each room, working at the "face" of coal, and mining out the latter as far back as practicable.

Upon the occasion in question, plaintiff had been working in such a room. The room neck or passageway, constituting the entrance thereto, was, it appears, of about the usual length, to-wit, seven feet, was about nine feet in width, and approximately eight and one-half or nine feet high. It appears that the usual width of such a passageway was seven feet, and that it was ordinarily about that high; this one being, it seems,

somewhat wider and higher than usual. A track was laid in this room neck, upon which coal cars were drawn and which connected with the main track in the entry. Plaintiff was injured while in this room neck, by the falling of a large rock, in the form of a slab, from the roof thereof.

It appears that there had been a fall from this roof some time before, of which plaintiff was aware; that two days prior to the accident, plaintiff, who it seems could not speak or understand English, indicated to defendant's foreman, by motioning, that the roof at this place was in bad condition, requesting that it be fixed. Plaintiff was injured at about two o'clock in the afternoon, about an hour before his regular quitting time. His testimony is to the effect that, at the time of his injury, he had finished putting up some props in the room in which he had been working and had some coal to load into a car; that he was through with his pick and sledge, and that he started to go out of the room through the room neck to get a drink of water, taking the pick and sledge with him. There was testimony to the effect that it was customary for plaintiff to take his tools out with him upon quitting work in the afternoon; the practice being, it seems, for a miner to drill and load powder holes at the end of the day, and to remove his tools from the room upon quitting work. Plaintiff's pick and sledge were found lying near him after the rock fell and caught him.

On behalf of defendant, its foreman testified that when plaintiff called his attention to the portion of the roof in question, he "employed" plaintiff to remove the rock, agreeing to pay him for his time in so doing. It appears that the miners were paid according to the quantity of coal mined by each, and that sometimes they would be separately engaged to do "dead work" of this character. And there was testimony that scratches were seen in the roof of the room neck near

the rock, after the latter had fallen, and which looked like fresh pick marks. Plaintiff, however, denied that he was told to remove the rock; and testified that he was not undertaking to do so when injured. And it is not denied that he had never theretofore been employed to do such "dead work," except to shovel out some loose rock.

## I. Of the demurrer to the evidence.

There can be no doubt that the room neck in question, furnishing a means of ingress and egress to and from the room in which plaintiff was working, was in the care and keep of the master, and that it owed the duty to its servant to exercise ordinary care to keep the place reasonably safe. As to this, there can well be no contention here, in view of the fact that defendant offered an instruction (defendant's instruction No. 6) which conceded that it was the duty of defendant to use reasonable care to keep its mine in a reasonably safe condition, and which must have been intended to apply to the portion of its mine here involved, to-wit this room neck. But regardless of this, there can be no doubt that defendant was required to exercise ordinary care to furnish a reasonably safe passageway connecting the entry of its mine with the room in which plaintiff was working. See Garard v. Coal & Coke Co., 207 Mo. 242, 105 S. W. 767, an action against this same defendant, and involving the latter's duty with respect to such a passageway.

It is conceded that the defendant was notified of the danger inhering in this roof two days prior to the time of plaintiff's injury. That it then became defendant's duty to take down the loose rock, or to timber the roof so as to prevent its falling, is beyond question. That the roof was not fixed, is likewise conceded; and whether defendant performed its duty in this respect by employing plaintiff to take down the rock was

a controverted question of fact. It is clear that the evidence was sufficient to make a prima-facie showing of negligence on the part of defendant; and that the demurrer was well ruled, unless plaintiff should be held to have assumed the risk, or to have been guilty of contributory negligence, as a matter of law.

It is clear that the danger from falling rock and debris in this passageway was not one of the risks of the employment assumed by plaintiff—whatever risks he may have assumed with respect to like perils in the room itself within which he was working—unless he was employed by defendant to make the roof safe. As to the latter, it is defendant's theory that plaintiff was so employed, and that he was engaged in taking down the rock when injured. And though there was evidence, such as the finding of plaintiff's tools near the spot and the alleged pick marks, which might justify an inference that plaintiff was injured while attempting to remove the rock, this too was denied; and the evidence is quite consistent with plaintiff's contention that he was merely passing through the place at the time, carrying some of his tools with him. Manifestly this was a question for the jury. And if plaintiff was injured because of defendant's negligence in failing to repair or remedy the roof, after notice of the defect therein, the danger therefrom was not a risk which plaintiff assumed. For it is well settled that the servant never assumes the risks of perils arising from the negligence of the master, but assumes only such risks as are ordinarily incident to his employment, after the master has performed his whole duty with respect to furnishing a reasonably safe place to work and reasonably safe appliances for performing the same. [See Obermeyer v. Chair Co., 229 Mo. 97, 125 S. W. 209; Bliesner v. Riesmeyer Distilling Co., 174 Mo. App. 139, 157 S. W. 980, and cases there cited.]

But it is contended that plaintiff was guilty of negligence, as a matter of law, in going under the por-

tion of the roof which fell. It is said that plaintiff's own testimony shows conclusively that he knew that the rock was liable to fall at any time, and that in going beneath it he was guilty of such negligence as to preclude a recovery, particularly, when, as appellant says, he might have walked through the room neck without passing directly beneath the dangerous portion of the roof.

Learned counsel for appellant single out a portion of respondent's testimony on cross-examination, which it is urged shows that plaintiff knew that the rock in this roof threatened immediate danger. When asked, in effect, if he did not know that the rock was liable to fall at any time, plaintiff (testifying through the medium of an interpreter) said: "Yes, sir; I knew it was bad." Following this, however, he said, in answer to questions of counsel, that he "Couldn't see that it was very bad." . . . "I just showed him (the foreman) the rock and told him to fix it." . . . "It didn't look good to me. I thought I would tell him to have it fixed and be on the safe side."

Considering plaintiff's testimony as a whole, we think it quite clear that it was not such as to show that it was obvious to him that the roof threatened immediate danger. He knew, or suspected, that this portion of the roof required fixing, and for this reason he reported its condition to the master, but the evidence is not such as to justify us in declaring that he was negligent, as a matter of law. Though he knew that the roof was defective, and that some danger inhered therein, he had the right to continue using the passageway, provided a reasonably prudent man in his situation would have concluded that he could do so without subjecting himself to the danger of immediate injury. [See Bradley v. Coal Co., 167 Mo. App. 182, 151 S. W. 180; Burkard v. Rope Co., 217 Mo. l. c. 281, 117 S. W. 35; Garaci v. Construction Co., 124 Mo. App. l. c. 719, 102 S. W. 594.]

And so far as concerns the contention that plaintiff might have gone in and out of his room without passing beneath the rock which fell, it is sufficient to say that there was evidence tending to show that loose rock was piled at the sides of the track, in the room neck, leaving but little more clear space than the width of the track. And it seems that the rock which fell was something like four feet long by three feet in width. Without rehearsing the evidence in detail touching the matter, it is sufficient to say that it was such as to make the question one for the jury. And it was referred to the latter by an instruction given at defendant's request.

We think that the ruling *nisi* upon the demurrer to the evidence was clearly proper.

II. One assignment of error pertains to the admission, over defendant's objections, of testimony, by way of conclusions, to the effect that it was the duty of defendant company to "timber" in the room neck, and otherwise see to the safety of the roof thereof. But the error, if any, in this respect was harmless, for the reason that it fully appears that the entries and room necks in defendant's mine, when completed and "received" by it, were within its care and keeping, and that it was its duty to exercise reasonable care to keep such places reasonably safe. And that such duty rested upon it was, as we have said above, conceded by an instruction given at defendant's request. No reversible error therefore inheres in the court's ruling complained of.

III. And error is assigned with respect to plaintiff's first instruction, in that it told the jury that it was "defendant's duty to use reasonable diligence to make and keep said entry and room neck or passageway in said room in reasonably safe condition;" it being urged that there was evidence on behalf of de-

fendant tending to show that it was plaintiff's duty to
care for this roof, and that this was a question for the
jury. But it is quite clear that the instruction is unob-
jectionable on this score, for the reasons indicated
above; there being no doubt that it was defendant's
duty to exercise reasonable care to keep this portion
of its mine in a reasonably safe condition.

IV. The only serious question before us, we
think, is that pertaining to plaintiff's instruction No.
2 of which appellant greatly complains. This in-
struction in part, told the jury that it was "defend-
ant's duty to use ordinary care to make and keep the
passageway in its mine, through which the plaintiff
would have to pass, reasonably safe from the falling
of overhanging rock, earth and debris in the roof of
said passageway, *and it was not the duty of plaintiff
to examine said roof to see that it was safe, but he
had a right to rely upon the defendant to see that said
passageway was kept reasonably safe, and that it had
exercised all reasonable care and diligence in that re-
gard.*" (Italics ours.)

This instruction is assailed, first, upon the ground
that it was error to tell the jury that it was not plain-
tiff's duty "to examine said roof to see that it was
safe." It is urged that under the evidence in the case
it was a question of fact for the jury as to whose duty
it was to "inspect" the roof for defects. And upon
this theory the court, at defendant's instance, gave an
instruction to the effect that if the jury believed from
the evidence that it was plaintiff's duty to inspect the
roof, then it was his duty "to know the condition of
the rock in question," even though the jury might be-
lieve from the evidence that it was the duty of defend-
ant "to take care of said roof."

The evidence by which it was sought to show that
it was plaintiff's duty to inspect the roof consisted of

180 App. 42

testimony relative to a custom of the miners to sound, with their picks, the roofs of the entries and passageways ahead of them in entering the mine each morning and proceeding to their respective rooms or places in which they performed their work. But testimony with respect to such customary precautions for their own safety fell far short of showing that the duty rested upon such miners to inspect or examine such roofs with respect to the safety thereof; and could not operate to relieve defendant of its duty in the premises with respect to such places. There is a wide difference between the exercise of precaution for one's own safety and being charged with the duty of inspection and examination. "The former," as is said in Rowden v. Mining Co., 136 Mo. App. l. c. 384, 117 S. W. 695, "springs from the instinct of self preservation and is but an exercise of the degree of care the law imposes on a servant to make reasonable use of his senses to care for his own safety." And the fact that a servant under such circumstances takes the ordinary precautions for his own safety does not in any way absolve the master from the performance of his duties with respect to proper inspection and examination of such places as are within his care and keeping. And so far as concerns plaintiff's duty to report an observed defect, it is conceded that such duty was performed in this instance. We think that the instruction under consideration is not objectionable upon this ground. And furthermore, it seems that the question as to whose duty it was to inspect for defects is here beside the case, for plaintiff's injury was not due to any failure to discover defects, but to remedy one pointed out. And hence this portion of this instruction could be taken only as having reference to an examination of the defect reported, with regard to the extent and imminence of the danger to be apprehended therefrom.

V. The more serious attack, however, upon plaintiff's said instruction No. 2, is that it told the jury that plaintiff "had a right to rely upon the defendant to see that said passageway was kept reasonably safe and that it had exercised all reasonable care and diligence in that regard." Plaintiff knew, or had reason to believe, that danger inhered in the roof in question. At any rate he was aware of the appearance of danger lurking therein. And it is strongly urged by learned counsel for appellant that, because of plaintiff's knowledge of the danger, it was reversible error for the court to tell the jury that plaintiff had the right to rely upon defendant to see that the passageway was kept reasonably safe, for the reason that plaintiff had no right to rely upon defendant to make or keep that safe which he knew to be unsafe.

There can be no doubt that it would have been improper to tell the jury that plaintiff was entitled to presume a condition to be true, which he knew to be untrue, as appellant claims this instruction did; for such presumption, which might otherwise obtain, would have no place in the presence of such actual knowledge on his part. Such an instruction is to be condemned; though there are cases holding an instruction of the latter character not to be reversible error, in the circumstances of the given case.

In Howard v. New Madrid, 148 Mo. App. 57, 127 S. W. 630, the action was for injuries sustained by plaintiff in passing over a defective sidewalk of the defendant city. The court instructed the jury that it was the city's duty "to keep the sidewalk in repair; and that plaintiff had the right to presume that this duty had been performed and that the sidewalk was in safe condition for the use of the public." The plaintiff knew that the walk was badly out of repair. After holding that the fact that the instruction overstated the degree of care required to be exercised by the city was harmless under the circumstances of the

case, it was said by this court that the error in this instruction would have been prejudicial on the issue, of whether plaintiff used due care for her own safety, had there been any evidence in the case tending to convict her of contributory negligence. The court was of the opinion that there was no such evidence in the case, and held that the giving of this instruction was, therefore, not reversible error; reference being also made to the fact that by other instructions the jury were required to find that plaintiff was in the exercise of ordinary care for her own safety when injured.

And in Swails v. Caruthersville, 158 Mo. App. 589, 138 S. W. 948, where the plaintiff was likewise injured in passing over a defective sidewalk, in an opinion by REYNOLDS, P. J., it was held by a majority of this court, NORTONI, J., dissenting, that a similar instruction was not prejudicial error, though there was evidence tending to convict plaintiff of contributory negligence, such as to make that question one for the jury. The giving of such instruction was held not to be reversible error, in view of the other instructions in the case relating to plaintiff's contributory negligence and the care required to be exercised by plaintiff for his own safety; it being said that any error inhering in the instruction in question was "fully cured by the extreme caution impressed upon the jury by these other instructions."

But whether such an error as appeared in the instruction in these two cases, relative to the issue of contributory negligence, can properly be said to have been rendered harmless and not prejudicial by reason of other instructions given in the case, is a matter which we deem here not directly involved, because of the wording of the instruction under consideration.

This instruction does not appear to go to the extent of telling the jury that plaintiff was entitled to presume that the roof in question was safe, whereby the jury would be told, in effect, that plaintiff was ab-

solved from the duty to exercise due care for his own safety. The instruction tells the jury that it was not plaintiff's duty to examine the roof to see that it was safe, but that he had the right to rely upon defendant to keep the passageway reasonably safe and that it had exercised due care in this regard. By this we do not think that the jury would understand that plaintiff might presume that the roof was safe, and go blindly about his work regardless of the danger, but rather that, under the circumstances of the case, he was not required to make a thorough or minute examination to discover the extent and imminence of the danger to be apprehended from the roof, "to see that it was safe;" and that having reported the appearance of danger, he could rely upon defendant to perform its duty in the premises, to examine, if necessary, as to the extent and imminence thereof, and to seasonably remedy the defect. Viewing the instruction in this light, it would appear to be faulty, in respect to this complaint against it, only in failing to tell the jury that plaintiff's right to rely upon the defendant to perform its duty was not an unqualified right and that plaintiff was not thereby relieved from the duty to exercise due care for his own safety—a matter which was supplied by this and other instructions relative to the issue of contributory negligence.

There can be no doubt that the instruction is a correct declaration of the law applicable to a case of this character, provided the injured servant has no knowledge of the defect and there is nothing tending to convict him of contributory negligence. It had the express approval of the Supreme Court in the Garard case, supra; this entire instruction being identical with one there given, with some very slight modifications to meet objections there unsuccessfully urged against it. And for this reason doubtless it was offered here; learned counsel who argued the case here for plaintiff having likewise been of counsel for the

plaintiff in the Garard case. It is needless to say, however, that it is extremely dangerous to thus adopt and offer, *in haec verba*, an instruction approved in another case, or at any rate one purporting to cover the entire case and directing a verdict. Here the facts differ from those in the Garard case, in that while the plaintiff there was ignorant of the danger, this plaintiff had knowledge of the defect in the roof; and necessarily his right to rely upon defendant to perform its duty in the premises is qualified by the fact of such knowledge on his part.

It would seem, however, that such knowledge would not of necessity wholly and utterly deprive plaintiff of the right to rely, to some extent at least, upon the performance by defendant of the duty devolving upon it after notice of the dangerous condition had been brought home to it. The master's duty with respect to furnishing a reasonably safe place to work, or a reasonably safe means of ingress and egress to and from the same, is a continuing one. The duty to inspect in order to learn of the existence of defects is not here involved, for defendant is not charged with a failure in this respect; but, being advised of the specific defect, defendant, under the circumstances, was charged with the duty to ascertain, if need be, the extent and imminence of the danger, and to use reasonable care to seasonably remedy the defect, unless otherwise relieved of such duty. It is conceded that defendant was in fact notified of the defect, and that it assumed to undertake to remedy it. And nothing appears to relieve defendant of its duty in the premises, except the evidence adduced by the latter to the effect that it employed plaintiff to make the place safe—a matter which we think it was not necessary for plaintiff to cover in this instruction, for reasons to be hereafter stated.

It is true that no one has the right to rely entirely upon the obligation of others to exercise due care for

his safety, and on his part neglect and disregard the dictates of prudence. But it would seem that plaintiff could here rely upon the defendant to make the roof in question reasonably safe, provided that the danger incurred by him in continuing to pass beneath this portion of the roof, in the meantime, was not so great that a man of ordinary prudence would not have encountered it, whereby he would be chargeable with contributory negligence. As to the latter, the succeeding portion of this same instruction, which we have not quoted, required the jury to find that plaintiff was in the exercise of ordinary care. And by other instructions a finding that plaintiff exercised due care for his own safety during all of the time in question was exacted from the jury. An instruction, given at defendant's request, told the jury "it was the duty of plaintiff, at all times while in defendant's mine, to use the care that an ordinarily careful and prudent person would have used, under all the circumstances, to avoid being injured;" and that if the jury believed from the evidence "that the plaintiff failed to use such care and his failure so to do, however slight, was one of the links in the chain of circumstances that directly led to his injury," then the verdict must be for the defendant. And other instructions directed a verdict for defendant if the jury believed from the evidence that plaintiff knew that the rock was loose and liable to fall, and that he walked under it when he might have passed in and out of his room without so doing.

Viewing plaintiff's instruction as we do, as presenting but a partial view of the correlative rights and duties of plaintiff and defendant in the premises, and not as authorizing a recovery upon a theory radically wrong and inconsistent with other instructions in the case, we think that when supplemented by the other instructions given, it does not contain reversible error, so far as concerns the ground of complaint against it now under consideration; for it is well set-

tled that one instruction may be explained by another
or others, omissions therein thus supplied, or a partial
view thereby supplemented, provided the whole are
consistent and harmonious. [See Gibler v. Terminal
R. R. Ass'n, 203 Mo. l. c. 222, 101 S. W. 37; Jackson v.
Telegraph Co., 174 Mo. App. 70, 156 S. W. 801, and
cases cited.]

VI. Complaint is made of plaintiff's said instruc-
tion No. 2, upon the ground that it omits any reference
to the defense that defendant, though chargeable with
the duty to keep the room neck in a reasonably safe
condition, had, in the given instance, discharged that
duty by employing plaintiff to make the necessary re-
pairs. And it is said that this instruction assumes
that the evidence of defendant respecting this matter
is untrue. No instruction was offered by defendant
seeking to have the jury told that if they believed that
plaintiff was so employed then defendant had dis-
charged its duty in the premises.

It may be true that, had such defense been made
an issue by the pleadings, it would have been revers-
ible error to give an instruction at plaintiff's request
hypothesizing the facts as claimed by him to be true,
and wholly omitting any reference to such defense,
provided that such error were not cured by another
instruction given in the case. [See Bliesner v. Riese-
meyer Dist. Co., 174 Mo. App. 139, 157 S. W. 980, and
cases there referred to.] However, no such defense
was here set up in the answer. Plaintiff charged that
it was defendant's duty to keep and maintain the roof
in question in a reasonably safe condition. Defend-
ant's answer was a general denial coupled with a plea
of contributory negligence, and a plea that plaintiff
voluntarily assumed a position under the rock, and
thereby assumed the risk. By the general denial, de-
fendant denied that it was its duty to maintain the
roof in a reasonably safe condition. It did not admit

its duty in this regard and plead that it had discharged the same by the employment of plaintiff to remedy the defect. Nowhere does the answer set up that defendant had so discharged its duty in the premises. And a plaintiff is not required, in submitting his instructions, to take into consideration a possible defense appearing from the evidence adduced, but which was not pleaded and hence the plaintiff not advised that the defendant intended to rely thereupon. With defendant's right to have the jury instructed as to such defense, we are not here concerned, and as to that say nothing.

VII. This same instruction is further assailed in that it omitted to reckon with the evidence tending to prove that plaintiff was actually engaged in removing the rock in question from the roof at the time of his injury. Though defendant did not plead the employment of plaintiff to take down the rock, the defense that he was injured while actually undertaking to do so, whether employed therefor or not, was available to it under its plea of assumption of risk; for if plaintiff was so engaged at the time of his injury "he voluntarily assumed a position under the rock and thereby assumed the risk" as set up in defendant's answer. But the omission of reference to this defense in plaintiff's instruction could be and was cured by another instruction given at defendant's request, whereby the jury were specifically told that if they believed from the evidence that plaintiff was injured while attempting to take down the rock, then their verdict must be for the defendant. [See authorities supra.]

VIII. Error is also assigned with respect to the giving of plaintiff's instruction No. 4, telling the jury under what circumstances plaintiff was to be held guilty of contributory negligence. The form of the instruction is not challenged, but on the contrary it is

said that it is "sound enough in a proper case;" the contention being that there was no evidence upon which to base it. But if the instruction is admittedly a sound one upon the issue of contributory negligence, then if there was no evidence upon which to base it, it must be because of a lack of evidence to convict plaintiff of contributory negligence. We therefore rule this assignment of error against the appellant.

IX. It is urged that the verdict, being for $4500, is excessive. Plaintiff, at the time of the injury, was forty-three years of age, healthy and able-bodied. His leg was broken at the ankle, so that the bone protruded through the skin, and the ankle badly crushed. It appears that the injury was difficult to treat, and that the wounded member was kept in plaster of paris for perhaps three months after reducing the swelling so that it could be thus encased. The only medical testimony offered was that of plaintiff's physician, who had treated him, and who testified that plaintiff's limb would be permanently impaired; that there would always be an enlargement thereof about the ankle, stiffness at this joint and weakness therein.

It appears that plaintiff suffered much pain; and he testified that he had been able to do no work up to the time of the trial below, to-wit, about two years and six months after the accident, and that he was not then able to work. And it was not denied that he had earned nothing in the meantime. He testified that he had been a miner for fourteen years, and that prior to the injury his earnings amounted to from $50 to $75 every two weeks, when the mine was running steadily; though defendant's evidence tended to show smaller average earnings than plaintiff claimed to have made.

In view of the evidence respecting plaintiff's injuries, we are not prepared to say that the verdict is excessive, at least it does not appear to be so exces-

sive as to justify any interference therewith by this court.

X. Other questions raised need not be separately noticed. Upon the whole record, we are of the opinion that no error intervened below prejudicial to the rights of appellant, demanding a reversal of the judgment.

We are expressly forbidden to reverse the judgment of any court unless we shall believe that error was committed against the appellant or plaintiff in error materially affecting the merits of the action. [Sec. 2082, Rev. Stat. 1909.] And our courts are required, at every stage of the action, to disregard any error or defect which shall not affect the substantial rights of the adverse party; and are commanded not to reverse any judgment because of such error or defect. [Sec. 1850, Rev. Stat. 1909.] In the case before us, we do not *believe* that error was committed materially affecting the merits of the action, or affecting the substantial rights of the appellant. While the instructions are not free from criticism, taken together we think that they fairly submitted to the jury the real issues in the case. The errors and omissions complained of in plaintiff's instructions pertain to the defenses of contributory negligence and assumption of risk set up in the answer. That these issues were fully and fairly submitted by the instructions as a whole, so that the jury could not well have been misled with respect thereto, is our belief.

We are, therefore, of the opinion that the judgment should be affirmed; and it is so ordered. *Reynolds, P. J.,* concurs; *Nortoni, J.,* dissents, in a separate opinion, and as he deems the decision herein contrary to that of the Supreme Court in Mockowik v. Railroad, 196 Mo. 271, 94 S. W. 256 and Nixon v. Railroad, 141 Mo. 425, 42 S. W. 942, he asks that the cause

be certified to the Supreme Court for final determination, which is accordingly done.

## DISSENTING OPINION.

NORTONI, J.—I concur in the view that the plaintiff's case is one for the jury—that is to say, I do not feel that he should be declared negligent as a matter of law on the evidence before us, and his right of recovery be precluded on that score. Beyond this, I am unable to agree with my associates.

It seems to me that plaintiff's second instruction was highly misleading on the facts of the case. The evidence is conclusive, indeed, plaintiff admits, that he knew the roof of the room neck inhered with some danger, for the rock was loose there and he had pointed it out to defendant's foreman but two days before. Everyone knows that a loose rock in the roof some three feet wide and four feet long, immediately above the passageway where a workman is to move about, presents a feature of the situation about the working place which inheres with some danger. Plaintiff knew this, as is admitted, and it is not to be doubted that the precepts of ordinary care required that he should exercise such care for his own safety as the circumstances of the particular situation might suggest—that is, the obligation of ordinary care on his part is to be ascertained and determined with respect to the facts and circumstances of the case. Though it be that one may assume that a master has discharged his duty and may go forward relying upon this, ordinarily, it is certain that the precepts of ordinary care for the safety of one's person requires more when he knows the fact to be that the master has not exercised the care required of him and that danger lurks in the situation because of the master's negligence. In such case, of course, the workman or servant must attend to

the facts of the particular situation. Plaintiff's second instruction is as follows:

"If the jury find from the evidence that the plaintiff was in defendant's employ mining coal on or about December 18, 1908, you are instructed that it was the defendant's duty to use ordinary care to make and keep the passageway in its mine, through which the plaintiff would have to pass, reasonably safe from the falling of overhanging rock, earth, and debris in the roof of said passageway *and it was not the duty of plaintiff to examine said roof to see that it was safe but he had a right to rely upon the defendant to see that said passageway was kept reasonably safe, and that it had exercised all reasonable care and diligence in that regard.*

If, therefore, you believe from the evidence that the defendant or its agent in charge of said mine knew, or by the exercise of reasonable diligence would have known that the roof of the passageway in its mine where plaintiff would have to pass was unsafe from overhanging rock, earth, or debris and negligently failed to remove such earth, rock, or debris, or to make same reasonably secure, and that plaintiff, while in the discharge of his duty, and in the exercise of ordinary care on his part, had his leg and ankle bruised, crushed and broken by the fall of overhanging rock, earth, or debris in the roof of said passageway, and that by reason of such injuries plaintiff was injured and damaged, then your verdict should be for plaintiff."

The portion of the instruction which I regard as highly misleading on the facts of the instant case is that above italicized. By this instruction the jury were directed that, though Gambino knew of the dangerous condition of the room neck, "it was not the duty of plaintiff to examine said roof to see that it was safe, but he had a right to rely upon the defendant to see that such passageway was kept reasonably

safe and that it had exercised all reasonable care and diligence in that regard." It is true the point to the matter relates to Gambino's right to go forward in the face of some danger and therefore touches upon the question of his contributory negligence. It is true, too, that other instructions, and, indeed by this one in another portion, the jury are required to find that he exercised ordinary care for his own safety. However this may be, such abstract statements of the law concerning plaintiff's duty to exercise ordinary care for his own safety do not, according to my view, alleviate the baneful and misleading effect of the instruction above copied, for it seems to adhere closely to the facts of the case and proceeds as though Gambino had a right to assume the defendant had rendered the room neck reasonably safe, when he knew it was defective but shortly before. It appearing that Gambino possessed knowledge concerning the fact that the roof of the room neck was defective, it seems to me the jury should not have been told that it was not his duty to examine concerning its safety and that he had a right to rely upon the defendant discharging its duty in the circumstance. There can be no doubt that the servant may usually presume that the master has performed his full duty in the premises, but when he is advised of the defect, the presumption which the law otherwise affords is dispelled by the fact of his knowledge, and he should not go forward presuming a condition to be true which he knows in fact to be untrue, but, on the contrary, should conduct himself as an ordinarily prudent person, situate in the same circumstances *and possessing the same knowledge.*

Presumptions, as has been well said in a famous case "may be looked on as the bats of the law, flitting in the twilight but disappearing in the sunshine of actual facts." [See Mockowik v. Kansas City, etc., R. Co., 196 Mo. 550, 571, 572, 94 S. W. 256.] So, too, it is declared by the Supreme Court, where it appeared a

traveler knew a defect existed in a crossing a month
before his injury, that though it might be supposed
such defect would be remedied during the succeeding
month, it was error to instruct the jury he might pre-
sume the crossing was reasonably safe for use. [See
Nixon v. Hannibal, etc., R. Co., 141 Mo. 425, 439, 42
S. W. 942.] It is true the instruction above copied
here does not employ the word "presume," as by say-
ing that Gambino had a right to presume the roof was
reasonably safe, but when viewed in the light of the
facts of the case, its language is tantamount thereto,
for it is to be considered as the jury must have under-
stood it. The instruction tells the jury that Gambino
had a right "to rely upon defendant to see that said
passageway was kept reasonably safe *and that it had
exercised all reasonable care and diligence in that re-
gard."* By this the jury were certainly led to believe
that Gambino had a right to assume or presume that
defendant had made the roof reasonably safe, for such
is the intendment of the legal phraseology to the ef-
fect that Gambino had a right to rely upon defendant's
having exercised all reasonable care and diligence in
that regard. This instruction purports to cover the
whole case and authorizes a verdict for plaintiff on
a finding as therein directed. In my judgment, it is
radically wrong in theory when considered on the facts
of the particular case and is so highly misleading as
to constitute prejudicial error. I do not believe that
its misleading effect was cured by other instructions
nor alleviated in the least by them.

Entertaining these views, I respectfully dissent
from the opinion of the court, and I deem the decision
to be violative of the principle and contrary to the
rule announced in Mockowik v. Kansas City, etc., R.
Co., 196 Mo. 550, 94 S. W. 256 and Nixon v. Hannibal,
etc., R. Co., 141 Mo. 425, 42 S. W. 942. I therefore
request that the case be certified to the Supreme Court
for final determination.